IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Paula Kay Dailey, | ) | C/A No.: 1:14-263-RMG-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

I.      Relevant Background

        A.      Procedural History

On October 26, 2009, Plaintiff filed applications for DIB and SSI in which she alleged her disability began on July 17, 2009. Tr. at 153–54, 157–60. Her applications

were denied initially and upon reconsideration. Tr. at 60–64, 69–70 72–73. On June 21, 2012, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Marcus Christ. Tr. at 30–55 (Hr'g Tr.). The ALJ issued an unfavorable decision on July 18, 2012, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 12–29. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–6. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on January 31, 2014. [ECF No. 1].

B.      Plaintiff's Background and Medical History

1.      Background

Plaintiff was 43 years old at the time of the hearing. Tr. at 33. She completed the tenth grade, but subsequently obtained a high school equivalency certificate. *Id.* Her past relevant work ("PRW") was as a cashier. Tr. at 51. She alleges she has been unable to work since July 2009. Tr. at 36.

2.      Medical History

Plaintiff was treated for heel pain and bilateral plantar fasciitis from 1996 to 2004. Tr. at 290–96.

Plaintiff underwent an MRI of her lumbar spine on November 29, 2007. Tr. at 244. It indicated very mild anterior annular bulging and degeneration at T12-L1, L1-2, and L2-3. *Id.* Plaintiff had minimal annular bulging at L3-4 and L4-5 and mild facet arthropathy at L4-5 and L5-S1. *Id.*

2

On March 18, 2009, Plaintiff complained to Gerald Congdon, M.D., of moderate low back pain with occasional arm numbness. Tr. at 250. Dr. Congdon noted paralumbar tenderness with decreased forward flexion. *Id.*

Plaintiff next presented to Dr. Congdon on April 3, 2009, complaining of moderate low back pain. Tr. at 247. Dr. Congdon again observed paralumbar tenderness with decreased forward flexion. *Id.*

On July 17, 2009, Plaintiff complained to Dr. Congdon of chronic pedal edema and occasional headaches. Tr. at 249. Dr. Congdon observed paralumbar tenderness with decreased forward flexion and noted that Plaintiff was in minimal distress. *Id.* He also observed mild edema in Plaintiff's bilateral feet. *Id.*

On August 13, 2009, Patricia A. Brown, M.D., conducted an initial clinical assessment at Waccamaw Mental Health Center. Tr. at 263–72. Plaintiff complained of sleep disturbance, decreased appetite and decreased energy. Tr. at 272. Ms. Brown described Plaintiff as depressed and crying most of the time. Tr. at 263. She assessed a Global Assessment of Functioning ("GAF")[1] score of 70. Tr. at 264.

---

[1] The GAF scale is used to track clinical progress of individuals with respect to psychological, social, and occupational functioning. American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Disorders,* Fourth Edition, Text Revision. Washington, DC, American Psychiatric Association, 2000. The GAF scale provides 10-point ranges of assessment based on symptom severity and level of functioning. *Id.* If an individual's symptom severity and level of functioning are discordant, the GAF score reflects the worse of the two. *Id.* GAF scores above 70 generally indicate an absence of symptoms and no more than slight impairment. *Id.* GAF scores between 61 and 70 suggest that the individual has mild symptoms, but is generally functioning well in social, occupational, and/or school settings. *Id.* GAF scores between 51 and 60 indicate moderate symptoms or moderate difficulty in social, occupational, and/or school

On September 3, 2009, Plaintiff presented to psychiatrist Ana Teran, M.D., for an initial visit. Tr. at 277–78. Plaintiff complained of severe mood changes, crying spells, mood lability, anger, and frustration. Tr. at 278. She also complained of feelings of hopelessness, helplessness, and worthlessness. *Id.* She indicated that she could not return to work and that she wanted SSI. *Id.* Dr. Teran wrote "[p]atient shows very little interest in getting better," and assessed a GAF score of 65. Tr. at 277–78.

Plaintiff followed up with Dr. Teran on September 9, 2009. Tr. at 280–81. Dr. Teran described her as moody, irritable, loud, and tearful. Tr. at 280. Dr. Teran further wrote that Plaintiff was easily agitated and had poor insight and poor judgment. *Id.* She assessed a GAF score of 60. Tr. at 281.

A plan of care from Waccamaw Mental Health Center dated October 26, 2009, indicates Plaintiff was diagnosed with mood disorder, NOS and borderline personality disorder. Tr. at 261.

Plaintiff presented to psychiatrist Kathleen O'Leary, M.D., on November 6, 2009. Tr. at 275–76. Dr. O'Leary noted that Plaintiff complained that Geodon caused her to have "the shakes," but Dr. O'Leary did not observe Plaintiff to have a tremor. Tr. at 275. Dr. O'Leary described Plaintiff as irritable and demanding. *Id.* She noted that Plaintiff wanted for her to prescribe Xanax, but agreed to take Depakote, which was previously prescribed, and to try Vistaril. *Id.* Dr. O'Leary assessed a GAF score of 80. Tr. at 276.

---

functioning. *Id.* GAF scores below 50 suggest serious symptoms or serious impairment in social, occupational, and/or school functioning. *Id.*

On November 11, 2009, William S. Hauck, D.C., completed a form in lieu of providing office visit records to the state agency disability examiner. Tr. at 255–56. He indicated Plaintiff complained of ongoing lumbar pain and sleep disturbance. Tr. at 255. He wrote that Plaintiff had x-rays of her cervical and lumbar spines, an ultrasound, and chiropractic spinal manipulative therapy. *Id.* He described Plaintiff's progress as poor and impaired due to a severe emotional problem. Tr. at 256.

On December 17, 2009, Plaintiff presented to Dr. Congdon regarding disability paperwork. Tr. at 343. He noted paralumbar tenderness with decreased forward flexion. *Id.* Dr. Congdon prescribed Flexeril 10 mg, as needed, up to twice daily for muscle spasms, Lorcet 10/650 mg, as needed, up to three times daily for pain; and Xanax 1 mg, as needed, up to three times daily for anxiety. *Id.*

Plaintiff followed up with Dr. O'Leary on January 6, 2010. Tr. at 273. She reported having discontinued her medications and having returned to Dr. Congdon to obtain pain medication, muscle relaxers, and Xanax. *Id.* Plaintiff indicated that she did not desire to continue treatment and that she suspected she had borderline personality disorder. Dr. O'Leary informed her that Waccamaw Mental Health Center did not treat borderline personality disorder or prescribe benzodiazepines. *Id.* Plaintiff and Dr. O'Leary agreed that she would discontinue treatment at Waccamaw Mental Health Center. *Id.*

On January 19, 2010, Plaintiff presented to Dr. Congdon for medication refills and to have disability paperwork completed. Tr. at 342. Dr. Congdon noted that Plaintiff had severe anxiety with bipolar traits, but that she did not tolerate the medication prescribed

5

by Dr. O'Leary. *Id.* He noted paralumbar tenderness with decreased forward flexion and decreased mood with tearful anxiety. *Id.*

On February 16, 2010, Plaintiff complained to Dr. Congdon of bilateral upper abdominal pain. Tr. at 340. An abdominal examination was normal. *Id.* Dr. Congdon prescribed Omeprazole for reflux. *Id.*

State agency consultant Michael Neboschick, Ph.D., completed a psychiatric review technique on February 16, 2010, in which he considered and determined Plaintiff did not meet Listings for affective disorders and personality disorders. Tr. at 297. He found that Plaintiff had mild restriction of activities of daily living; mild difficulties in maintaining concentration, persistence, or pace; and moderate difficulties in maintaining social functioning. Tr. at 307. Dr. Neboschick indicated Plaintiff was moderately limited with respect to the following: the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; and the ability to accept instructions and respond appropriately to criticism from supervisors. Tr. at 312. He specified that Plaintiff would "work best in structured, slow paced settings that do not require much direct, on-going interaction with the public." Tr. at 313.

Plaintiff visited Asbury H. Williams, M.D., for a consultative examination on February 18, 2010. Tr. at 315–17. She alleged disability due to depression, anxiety, low blood pressure, difficulty swallowing, and pain in her feet, neck, and back. Tr. at 315. Aside from abdominal tenderness and an enlarged liver, Dr. Williams noted no physical

abnormalities. Tr. at 316. Dr. Williams described Plaintiff's emotional state as "extremely nervous and depressed." *Id.* Plaintiff's lumbar x-ray was normal and her cervical x-ray was normal, except for some straightening of the lordotic curve that was likely caused by a muscle spasm. *Id.*

Plaintiff followed up with Dr. Congdon on March 2, 2010, for upper abdominal pain. Tr. at 338. Dr. Congdon noted epigastric tenderness and mild distention, paralumbar tenderness, decreased forward flexion, and decreased mood with tearful anxiety. *Id.* He prescribed two new medications to treat reflux. *Id.*

On March 11, 2010, Plaintiff presented to Dr. Congdon complaining of bilateral side pain. Tr. at 336. Dr. Congdon observed decreased mood with tearful anxiety, abdominal and paralumbar tenderness, and decreased forward flexion. *Id.*

On March 30, 2010, state agency medical consultant Jim Liao, M.D., completed a physical residual functional capacity assessment in which he indicated Plaintiff was limited as follows: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) for a total of about six hours during an eight-hour day; sit (with normal breaks) for a total of about six hours during an eight-hour day; and occasionally climb ladders/ropes/scaffolds, stoop, crouch, and crawl. Tr. at 319–26.

On April 14, 2010, Plaintiff followed up with Dr. Congdon with complaints of upper abdominal pain and to obtain medication for anxiety. Tr. at 334. Plaintiff weighed 214 pounds. *Id.* She had abdominal and paralumbar tenderness and decreased forward flexion. *Id.* Dr. Congdon observed decreased mood with tearful anxiety. *Id.*

Plaintiff followed up with Dr. Congdon on June 16, 2010. Tr. at 332. She complained of difficulty sleeping and eating and had experienced weight loss. *Id.* Plaintiff weighed 198 pounds. *Id.* Dr. Congdon observed abdominal tenderness in all four quadrants. *Id.* He diagnosed reflux esophagitis. *Id.*

Plaintiff visited Dr. Congdon on July 15, 2010, for medication refills. Tr. at 331. Plaintiff complained of back pain, impaired sleep, and weight loss caused by nausea and vomiting. *Id.* Dr. Congdon observed paralumbar tenderness with decreased forward flexion and decreased mood with tearful anxiety. *Id.* Plaintiff weighed 191 pounds. *Id.*

On September 20, 2010, Plaintiff visited Dr. Congdon complaining of ear pain and seeking to have medications refilled and disability paperwork completed. Tr. at 329. Dr. Congdon noted paralumbar tenderness with decreased forward flexion and decreased mood with tearful anxiety. *Id.* Plaintiff weighed 177 pounds. *Id.* He encouraged Plaintiff to follow up with Waccamaw Mental Health. *Id.*

On October 13, 2010, Plaintiff attended a consultative examination with psychologist Deborah C. Tyler, Ph.D. Tr. at 348–52. Dr. Tyler described Plaintiff as dramatic and overinclusive in her thinking and as varying between tearfulness and hostility. Tr. at 348. She indicated that there were "indications that her capacity for accuracy is not good and her reliability is also not good." *Id.* Plaintiff had a normal general fund of information and good remote memory, but she declined to perform memory and concentration tasks. Tr. at 350.

On November 19, 2010, state agency consultant Judith Von, Ph.D., considered Listings for affective disorders and personality disorders and concluded that Plaintiff's

impairments did not meet a Listing. Tr. at 354–67. She determined that Plaintiff had no restriction of activities of daily living and mild difficulties in maintaining social functioning and concentration, persistence, or pace. Tr. at 364.

On December 2, 2010, state agency medical consultant Jean Smolka, M.D., assessed the following limitations with respect to physical ability to perform work activity: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) for about six hours in an eight-hour workday; sit (with normal breaks) for about six hours in an eight-hour workday; never climb ladders/ropes/scaffolds; occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; and avoid even moderate exposure to hazards. Tr. at 368–75.

C.    The Administrative Proceedings

1.    The Administrative Hearing

a.    Plaintiff's Testimony

At the hearing on June 21, 2012, Plaintiff testified that she lived in a house with a roommate and that she was unable to obtain food stamps or other assistance because of her roommate's income. Tr. at 34. She acknowledged having a driver's license. Tr. at 35.

Plaintiff stated she last worked in July 2009, after suffering a mental breakdown and being released from her job. Tr. at 36. She indicated that she injured her back when she applied dry ice in an attempt to alleviate back pain. *Id.* She also stated she experienced problems with swelling in her hands and feet and had difficulty standing and walking. *Id.* Plaintiff testified that she had surgery to correct fallen arches in both of her feet and carpal tunnel surgery on her bilateral hands. Tr. at 37. She complained of

continued difficulty standing because of soreness in her arches. *Id.* She testified that she required a cane to walk about her home. *Id.* She also stated she experienced seizures, but indicated that her last seizure occurred two-and-a-half to three years earlier. Tr. at 37–38. She testified that she experienced migraines in the past that typically lasted for two to three days, but that she had not experienced any recently. Tr. at 44–45.

Plaintiff testified she experienced constant pain in her back, feet, and throughout her legs. Tr. at 42. She classified her back pain as an eight out of ten. Tr. at 44. She stated she obtained treatment from clinics where the providers refused to prescribe pain medications. Tr. at 41. She indicated that she could perform a physical task for 30 to 45 minutes before requiring a rest period. Tr. at 42.

When asked why she could no longer perform the type of work she performed in the past, Plaintiff stated that she was unable to deal with the public. Tr. at 43. She testified she was unable to obtain mental health treatment because Waccamaw Mental Health would not accept her as a patient and private providers would not accept her because she had a pending application for disability. Tr. at 45. She indicated she could maintain attention and concentration unless she was upset. Tr. at 45–46. Plaintiff testified that she cried in private at least three times per week and in public places that included her attorney's office and her doctor's office. Tr. at 46. She stated she had no energy. *Id.*

Plaintiff testified that she slept for no more than two hours at a time. Tr. at 47. She stated she could stand for no more than three hours at a time and had difficulty lifting a two-gallon pitcher from her refrigerator. Tr. at 48–49. She indicated that she sat for most of a typical day. Tr. at 50.

Plaintiff testified that she washed dishes, bathed her dog, and went to a friend's house to play Wii. Tr. at 50–51. She stated she experienced difficulty moving after performing those activities. *Id.*

b.    Vocational Expert Testimony

Vocational Expert ("VE") J. Adger Brown, Jr., reviewed the record and testified at the hearing. Tr. at 51–54. The VE categorized Plaintiff's PRW as a cashier, *Dictionary of Occupational Titles* ("*DOT*") number 211.462-014, as light with a specific vocational preparation ("SVP") of three. Tr. at 51. The ALJ described a hypothetical individual of Plaintiff's vocational profile who was limited to simple, routine, repetitive tasks with no production rate or pace work and only occasional interaction with the public; could perform light work; should avoid climbing of ladders, ropes, or scaffolds; could occasionally climb ramps or stairs, stoop, crouch, kneel, and crawl; could frequently handle objects; and should avoid even moderate exposure to moving machinery and unprotected heights. Tr. at 51–52. The VE testified that the hypothetical individual could not perform Plaintiff's PRW. Tr. at 52. The ALJ asked whether there were any other jobs in the region or national economy that the hypothetical person could perform. *Id.* The VE identified light, unskilled work as a machine tender, *DOT* number 920.685-086, with 20,000 positions in the state economy and in excess of 800,000 positions nationally; an inspector, *DOT* number 222.687-042, with 9,000 positions in the state economy and in excess of 345,000 positions nationally; and a garment folder, *DOT* number 789.687-066, with 1,000 positions in the state economy and in excess of 39,000 positions nationally. *Id.* The ALJ next asked the VE to assume the same restrictions in the first hypothetical, but

to further assume the individual was limited to the sedentary exertional level. Tr. at 53. The VE testified that the hypothetical individual could perform sedentary, unskilled work as a machine tender, *DOT* number 731.685-014, with 7,000 positions in the state economy and in excess of 275,000 positions nationally; a surveillance monitor, *DOT* number 379.367-010, with approximately 1,000 positions in the state economy and in excess of 40,000 positions nationally; and an addresser, *DOT* number 209.587-010, with 500 positions in the state economy and in excess of 21,000 positions nationally. Tr. at 53–54. The ALJ then asked the VE if there would be jobs available for an individual who was expected to be off task for more than an hour a day in addition to regularly scheduled breaks. Tr. at 54. The VE testified that the individual would exceed normal allowable break time and that such a limitation would be inconsistent with gainful employment. *Id.* The ALJ also asked if there would be jobs available for an individual who would miss more than two days of work per month because of mental and physical incapacities. *Id.* The VE testified that would exceed normal, allowable absenteeism and would be inconsistent with gainful employment. *Id.*

### 2.    The ALJ's Findings

In his decision dated July 18, 2012, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.
2.    The claimant has not engaged in substantial gainful activity since July 17, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)
3.    The claimant has the following severe impairments: depression (affective disorder) and back disorders (20 CFR 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.   After careful consideration of the entire record, I find that the claimant had the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). I find that the claimant is limited to no climbing of ladders, ropes or scaffolds, occasional climbing of ramps or stairs, occasional stooping, crouching, kneeling, crawling, and frequent handling. The claimant is further limited to moderate exposure to moving machinery and unprotected heights. The claimant is limited to simple, routine, and repetitive tasks and no production rate or pace work. In addition, the claimant would be limited to occasional interaction with the public.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.   The claimant was born on October 25, 1968 and was 40 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.   The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from July 17, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 17–23.

II.   Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)   the ALJ failed to evaluate Plaintiff's subjective symptoms;

2)      the ALJ violated Plaintiff's right to a fair hearing by not allowing her to present the testimony of a corroborative witness;

3)      the ALJ ignored Plaintiff's work history; and

4)      the ALJ erroneously rejected the opinion of Plaintiff's treating physician and other treating and examining sources.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.      Legal Framework

        1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that

impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b), §416.920(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is

16

supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    Credibility Assessment

a.    Plaintiff's Statements

Plaintiff argues that the ALJ neglected to comply with the requirements set forth in SSR 96-7p for consideration of subjective symptoms. [ECF No. 15 at 8–9]. Plaintiff maintains that the ALJ's decision contains no analysis of her credibility. *Id.* at 9. She contends that the ALJ ignored evidence of "recurrent crying spells, inability to sleep, fear of being left alone, and dependence upon her partner in virtually all activities of daily living." *Id.* Plaintiff argues that the ALJ failed to discuss any of the non-medical factors outlined in SSR 96-7p. *Id.* at 10.

The Commissioner argues that the ALJ provided specific reasons for discounting Plaintiff's subjective complaints. [ECF No. 18 at 13]. She further maintains that the ALJ concluded that Plaintiff's subjective complaints were not substantiated by the objective

medical evidence and Plaintiff's limited treatment history. *Id.* at 14. The Commissioner notes that the ALJ also explained that Plaintiff's credibility was undermined by the activities that she performed on a daily basis. *Id.* at 17.

Prior to considering a claimant's subjective complaints, an ALJ must find a claimant has an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause subjective complaints of the severity and persistence alleged. *See* 20 C.F.R. § 404.1529; SSR 96-7p; *Craig*, 76 F.3d 585, 591–96 (4th Cir. 1996) (discussing the regulation-based two-part test for evaluating pain). The first part of the test "does not . . . entail a determination of the intensity, persistence, or functionally limiting effect of the claimant's asserted pain." 76 F.3d at 594 (internal quotation omitted). Second, and only after claimant has satisfied the threshold inquiry, the ALJ is to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." *Id.* at 595. This second step requires the ALJ to consider the record as a whole, including both objective and subjective evidence, and SSR 96-7p cautions that a claimant's "statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p.

If an ALJ rejects a claimant's testimony about her pain or physical condition, he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989). "The determination or decision must contain specific

reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. In evaluating the intensity, persistence, and limiting effects of an individual's symptoms and the extent to which they limit an individual's ability to perform basic work activities, adjudicators are to consider all record evidence, which can include the following: the objective medical evidence; the individual's ADLs; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any measures other than treatment the individual uses to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id.*

The ALJ wrote the following regarding Plaintiff's credibility:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. I do not find the claimant's allegations of pain and mental limitations entirely credible. Although I accept the claimant's allegations that her symptoms limited her mental and functional capacity to a mild degree, she is not credible to the extent that her capacity was so limited that she was unable to engage in substantial gainful activity consistent with the residual functional capacity that I have assessed.

Tr. at 20.

The undersigned recommends a finding that the ALJ adequately considered Plaintiff's statements regarding her subjective symptoms. The ALJ considered Plaintiff's activities of daily living, noting that she performed household chores, cared for her personal hygiene, washed dishes, cared for her dog, and checked her mail daily. Tr. at 18. The ALJ also noted that Plaintiff reported playing cards with her roommate's mother, having a driver's license, watching television, and playing Nintendo bowling. Tr. at 19. The ALJ considered the location, duration, frequency, and intensity of Plaintiff's pain, recognizing that she complained of pain in her low back, occasional arm numbness, and edema in her bilateral feet. Tr. at 20. He noted her complaints about sleep disturbance and crying spells and evidence of depressed mood and anxiety. *Id.* However, he also acknowledged mild and benign objective signs and Plaintiff's statement that her back pain was better with rest. *Id.* The ALJ acknowledged Plaintiff's statements about financial barriers to obtaining medication and medical treatment, but pointed to her physician's statement that Plaintiff "showed very little interest in getting better" and preferred to use pain medication instead of developing coping skills. Tr. at 19, 20. He further noted that Plaintiff was unwilling to take the prescribed medications for her mental health impairment and instead took her roommate's opiate medications. Tr. at 20. He referred to Dr. Tyler's indication that Plaintiff claimed she was not on antidepressant medication because of her financial situation, but that she continued to take pain medication and a muscle relaxer. Tr. at 21. Finally, he cited 20 C.F.R. §§ 404.1530 and 416.930, which provide that, if a claimant does not follow her prescribed treatment without good reason, the ALJ should find that the claimant is not disabled. *Id.* In light of

the foregoing, the undersigned recommends a finding that the ALJ adequately considered Plaintiff's statements about the limiting effects of her subjective symptoms, but concluded that her statements lacked credibility.

b.    Statements of Lay Witnesses

Plaintiff argues that the ALJ ignored written statements in the record from her partner and caretaker, a former coworker, and three of her friends. *Id.* at 10–11.

The Commissioner maintains that the ALJ did not err in failing to assess the written statements from Plaintiff's roommate and other acquaintances because their statements merely duplicated those of Plaintiff. *Id.* at 18.

"Pursuant to SSR 96-7p, in determining the credibility of a claimant's statements, the ALJ must consider the entire case record including statements from 'other persons about the symptoms and how they affect the individual.'" *Harris v. Astrue*, C/A No. 1:11-2442-TMC-SVH, 2012 WL 6761333, at *11 (D.S.C. Dec. 5, 2012), *adopted by* 2013 WL 30140 (D.S.C. Jan. 3, 2013), *citing* SSR 96-7p. "Other persons may include non-medical sources such as spouses, parents, caregivers, siblings, other relatives, friends, neighbors, and clergy." *Id.*, *citing* 20 C.F.R. § 404.1513(d). These lay witnesses "may provide [statements] about how the symptoms affect [a claimant's] activities of daily living and [her] ability to work. . . ." *Id.*, *citing* 20 C.F.R. § 404.1529(a).

The record contains a letter from Plaintiff's roommate Lycha Hembree. Tr. at 193. Ms. Hembree explained that Plaintiff stopped taking the medication she was prescribed at Waccamaw Mental Health and that Plaintiff was unable to return there for treatment. *Id.* She indicated that Plaintiff had problems with anger and was unable to sleep for more

21

than a few hours per night. *Id.* Ms. Hembree also indicated the ways in which she assisted Plaintiff. *Id.*

On January 18, 2010, Freda Hembree[4] wrote a letter in which she explained that Plaintiff stayed with her for four or five days per week while Plaintiff's roommate worked. Tr. at 286. She indicated Plaintiff cried "all the time" and "stayed angry." *Id.*

The record also contains a letter from Lisa Lewis[5] dated January 20, 2010. Tr. at 285. She stated she had known Plaintiff for 23 years and that Plaintiff had once been outgoing, but had stopping going out and speaking with her. *Id.* Ms. Lewis wrote that Plaintiff stayed with her sister-in-law while Plaintiff's roommate was at work because Plaintiff was afraid of staying alone. *Id.* She also wrote that her sister informed her that Plaintiff cried frequently and was unable to write checks. *Id.*

On January 24, 2010, Janice Hembree wrote a letter in which she indicated that she had known Plaintiff for 20 years and that Plaintiff had worked hard and was fun to be around in the past. Tr. at 289. She wrote that Plaintiff was no longer able to do anything and frequently cried and broke down around others. *Id.*

On January 25, 2010, Laura Poole wrote a letter on behalf of Plaintiff. Tr. at 287. Ms. Poole indicated that she was Plaintiff's former coworker. *Id.* She indicated that Plaintiff became distraught and upset and cried at work. *Id.* She also indicated Plaintiff complained of pain while working. *Id.*

---

[4] The typewritten letter bears Freda Hembree's name and a phone number, but it is unsigned.

[5] Ms. Lewis's letter is also typed and contains an address and cell phone number, but it has no signature.

The undersigned is constrained to find that the ALJ erred in failing to consider the lay witnesses' statements. The undersigned's review of the record reveals no mention of the statements of Lycha Hembree, Freda Hembree, Lisa Lewis, Janice Hembree, or Laura Poole. In *Harris*, this court remanded the claim where the ALJ neglected to consider statements provided by the plaintiff's former employer. *See* 2012 WL 6761333, at *11–12. In this case, the error is more substantial because the ALJ neglected to address statements provided by five witnesses as opposed to one. Similarly, in *Harris*, the Commissioner argued that the ALJ's error was harmless because the witnesses' statements were similar to Plaintiff's testimony, which the ALJ reasonably disregarded. *See Id.* at 11. The court rejected the argument in *Harris* and must reject the same argument here. Although the undersigned recommended a finding that the ALJ adequately assessed Plaintiff's statements regarding her objective complaints, all of the ALJ's reasons for discounting Plaintiff's credibility do not extend to the witnesses. Therefore, the undersigned recommends that the claim be remanded for the ALJ to consider the witnesses' statements.

### 2.    Refusal to Allow Witness Testimony

Plaintiff argues that the ALJ refused to allow Plaintiff to present her roommate's corroborative testimony, which violated her right to a fair hearing under 20 C.F.R. § 404.950(e). [ECF No. 15 at 11].

The Commissioner argues that the ALJ was not required to accept Plaintiff's roommate's testimony because the ALJ determined that it would be cumulative of Plaintiff's testimony. [ECF No. 18 at 19–20]. The Commissioner further maintains that

Plaintiff's attorney failed to object to the ALJ's decision not to hear the roommate's testimony. *Id.* at 20.

Pursuant to 20 C.F.R. §§404.950(a), 416.1450(a), "[a]ny party to a hearing has a right to appear before the administrative law judge . . . to present evidence and to state his or her position." 20 C.F.R. §§ 404.950(e) and 416.1450(e) state the following regarding witnesses: "Witnesses may appear at a hearing . . . . The Administrative Law Judge may ask the witnesses any questions material to the issues and shall allow the parties or their designated representatives to do so."

However, "where a lay witness's testimony merely repeats the allegations of a plaintiff's own testimony and is likewise contradicted by the same objective evidence discrediting the plaintiff's testimony, specific reasons are not necessary for dismissing the lay witness's testimony." *Plowden v. Colvin*, C/A No. 1:12-2588-DCN-SVH, *adopted by* 2014 WL 37217 (D.S.C. Jan. 6, 2014); *see also Lorenzen v. Chater*, 71 F.3d 316, 319 (8th Cir. 1995); *Carlson v. Shalala*, 999 F.2d 180 (7th Cir. 1993); *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

The following exchange occurred between the ALJ and Plaintiff's attorney with respect to the witness's testimony:

ATTY:      I do have her roommate as a witness.

ALJ:       Is the roommate—what's the roommate going to tell me? Is she going to basically confirm what we just heard?

ATTY:      And what a mess she is, yes, sir.

24

ALJ:        Okay. I don't think I need to hear that. Okay.

Tr. at 50.

The undersigned recommends a finding that the ALJ erred in failing to allow Plaintiff to present her roommate's testimony. In *Plowden*, the witness's statement was in the record and this court determined that the ALJ did not err in failing to address it with specificity because it was duplicative of the plaintiff's testimony and did not address difficulties the plaintiff had in performing her job. *See* C/A No. 1:12-2588-DCN-SVH. Here, on the other hand, the record does not contain the testimony at issue because the ALJ declined to allow Plaintiff to present it. Although Plaintiff's attorney suggested that her roommate's testimony would be somewhat duplicative of her testimony, the undersigned cannot determine if it actually was duplicative because it was not included in the record. Pursuant to 42 U.S.C. § 423(d)(5)(A), "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." By preventing Plaintiff from offering her roommate's testimony, the ALJ circumvented Plaintiff's effort to meet her burden of proof.

Furthermore, although the Commissioner argues that Plaintiff waived this issue by failing to object to the ALJ's decision to disallow her roommate's testimony, the undersigned finds informative 42 U.S.C. § 405(b)(1), which indicates that the "rules of evidence applicable to court procedure" do not apply with respect to the admissibility of evidence in hearings held before the Social Security Administration. It logically follows that, because the Federal Rules of Evidence do not govern the admissibility of evidence,

they would also not govern objections to the admissibility of evidence. Therefore, Plaintiff was not required to preserve a claim of error according to the procedures set forth in the Federal Rules of Evidence and did not waive the issue by failing to object on the record after the ALJ stated that he did not need to hear her roommate's testimony.

### 3.    Failure to Consider Plaintiff's Work History

Plaintiff argues the ALJ neglected to consider her 20-year history of steady earnings in assessing her credibility. [ECF No. 15 at 11].

The Commissioner argues that "Plaintiff's work history does not detract from the fact that substantial evidence (medical findings, conservative treatment, and daily living activities) supports the credibility determination." [ECF No. 18 at 17].

The undersigned recommends a finding that the ALJ did not err in failing to explicitly consider Plaintiff's work history. Plaintiff correctly asserts that a claimant's work history may be considered in assessing pain. *See Steffanick v. Hegler*, 570 F. Supp. 420, 427 (D.C. Md. 1983) ("When . . . a claimant has a substantial work record, his testimony as to pain should not be disregarded lightly") *citing e.g., Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *Vitek v. Finch* (438 F.2d 1157, 1159; *Nanny v. Mathews*, 423 F. Supp. 548, 551 (E.D.Va. 1976). However, where, as here, the ALJ complied with the requirements of SSR 96-7p and where his credibility finding was supported by substantial evidence, he did not lightly disregard the claimant's credibility or testimony as to pain. The explicit purposes of SSR 96-7p are to clarify when the evaluation of symptoms requires a credibility finding; to explain the factors to be considered in assessing a claimant's credibility; and to state the importance of explaining

the reasons for the credibility finding. SSR 96-7p. Pursuant to SSR 96-7p, the adjudicator must consider "the entire case record." Although SSR 96-7p requires that the credibility determination be explained, it does not require explicit consideration of a claimant's work history in all cases. The undersigned submits that if a claimant's work history particularly supports a finding that her testimony is credible or incredible, it would be best practice for the ALJ to discuss it in the decision. For example, if a claimant worked for the same employer over a period of many years, consistently had high earnings, or reported little or no income during periods in which she was working, these factors would be particularly relevant to the credibility assessment. However, Plaintiff's work history did not weight irrefutably in favor of a finding that she was credible and, thus, did not require explicit consideration. Although Plaintiff worked during each year from 1984 until 2009, a review of her earnings records reveals inconsistencies. *See* Tr. at 165. Plaintiff earned less than the annual amounts considered to be substantial gainful activity ("SGA")[6] in 1984, 1985, 1987, 1992, 1998, 1999, 2008, and 2009, and worked for at least ten different employers between 1996 and 2009. These facts indicate that she did

---

[6] According to the Social Security Administration, monthly SGA amounts for non-blind individuals were $300 from 1980–1989, $500 from 1990–1998, $700 from 1999–2000, $740 in 2001, $780 in 2002, $800 in 2003, $810 in 2004, $830 in 2005, $860 in 2006, $900 in 2007, $940 in 2008, and $980 in 2009. Social Security Administration, *Substantial Gainful Activity*, www.ssa.gov (Dec. 29, 2014), www.ssa.gov/OACT/COLA/ sga.htm. A court may take judicial notice of factual information located in postings on government websites. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (court may "properly take judicial notice of matters of public record"). Multiplying the monthly SGA amounts by 12 yields annual SGA amounts of $3,600 for 1980–1989, $6,000 for 1990–1998, $8,400 for 1999–2000, $8,880 for 2001, $9,360 for 2002, $9,600 for 2003, $9,720 for 2004, $9,960 for 2005, $10,320 for 2006, $10,800 for 2007, $11,280 for 2008, and $11,760 for 2009.

not work without periods of interruption. *See* Tr. at 165–69. Therefore, it is unlikely that Plaintiff's work history would qualify as the "substantial work record" referenced in *Steffanick*. Therefore, the undersigned determines that the ALJ was not required to separately discuss Plaintiff's work history.

### 4.    Review of Opinion Evidence Offered by Treating Physician and Other Sources

Plaintiff argues that the ALJ erred in rejecting the opinions of her treating physician and other treating and examining sources regarding her ability to work. [ECF No. 15 at 12].

The Commissioner maintains that the ALJ adequately considered and explained his conclusions regarding the opinions of Drs. Congdon, Hauck, and Tyler. [ECF No. 18 at 18–23].

Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." SSR 96-5p, *quoting* 20 C.F.R. §§ 404.1527(a)(2). If a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96-2p; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record).

Pursuant to SSR 96-2p:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.

SSA rules require that the ALJ carefully consider medical opinions on all issues. SSR 96-5p. Pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c), if a treating source's opinion is not accorded controlling weight, the ALJ should consider "all of the following factors" to determine the weight to be accorded to every medical opinion in the record: examining relationship; treatment relationship, including length of treatment relationship and frequency of examination and nature and extent of treatment relationship; supportability; consistency with the record as a whole; specialization of the medical source; and other factors. *See also Johnson*, 434 F.3d at 654. The ALJ's decision must explain the weight accorded to all opinion evidence. 20 C.F.R. §§ 404.1527(e)(2)(ii), 417.927(e)(2)(ii). In all unfavorable and partially-favorable decisions and in fully-favorable decisions based in part on treating sources' opinions, the ALJ must include the following:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight.

SSR 96-2p.

In view of the foregoing authorities, the court considers the ALJ's treatment of the opinions of Drs. Congdon, Hauck, and Tyler.

a.    Dr. Congdon's Opinion

On June 20, 2010, Dr. Congdon completed a physical capacities evaluation. Tr. at 376–78. He indicated Plaintiff could work for three hours during an eight-hour day. Tr. at 376. He wrote that Plaintiff could sit, stand, or walk for an hour or less at one time. *Id.* He suggested that Plaintiff could lift up to 50 pounds occasionally and could use her bilateral arms, hands, legs, and feet repetitively. *Id.* He noted that Plaintiff could climb, bend, squat, kneel, crawl, lift her hands above shoulder level, and twist from side to side on an occasional basis. *Id.* He indicated that Plaintiff could never work at unprotected heights or be exposed to dangerous machinery, noise and vibration, temperature extremes, dust, fumes, or gases. Tr. at 377. He stated that Plaintiff's current level of function had lasted or was expected to last for a period of 12 months or more and caused pain that likely affected her ability to concentrate. *Id.* He noted that Plaintiff had moderate pain in her back, hips, and bilateral lower extremities. Tr. at 378. He suggested that Plaintiff would require breaks or rest periods during the day because of facets of her impairment. Tr. at 377. He noted that Plaintiff took medication for chronic pain that likely produced side effects and/or required additional limitations on her activity. *Id.* He indicated that Plaintiff was not a malingerer. *Id.* Finally, he noted that Plaintiff's impairments were likely to produce good and bad days and that Plaintiff would likely be absent from work approximately four days per month. *Id.*

Plaintiff argues that the ALJ did not explain his reasons for accepting parts of Dr. Congdon's opinion and rejecting other parts. [ECF No. 15 at 13]. She also contends that Dr. Congdon's opinion was supported by his treatment record and by the opinions of Plaintiff's other treating sources. *Id.*

The Commissioner argues that the ALJ sufficiently articulated his reasons for discounting portions of Dr. Congdon's opinion. [ECF No. 18 at 21].

The ALJ accorded substantial weight to Dr. Congdon's opinion, but determined that Dr. Congdon's conclusions that Plaintiff could only work for three hours in an eight-hour day and would miss four days of work per month were not supported by the evidence. Tr. at 21. He wrote that the "limitation of no climbing of ladders, ropes, or scaffolds, occasional climbing of ramps or stairs, occasional stooping, crouching, kneeling, crawling, frequently handling, and moderate exposure to moving machinery and unprotected heights" was consistent with and supported by Dr. Congdon's opinion. Tr. at 22.

The undersigned recommends a finding that the ALJ appropriately considered Dr. Congdon's opinion. The ALJ explained the weight accorded to Dr. Congdon's opinion and considered all applicable factors set forth in 20 C.F.R. § 404.1527(c). He discussed the examining relationship, the treatment relationship, and the supportability of Dr. Congdon's opinion when he discussed Plaintiff's treatment visits and Dr. Congdon's observations and findings during those visits. *See* Tr. at 20. The ALJ determined that the physical restrictions set forth by Dr. Congdon were consistent with his treatment records and with other evidence in the record. *See* Tr. at 21. However, he determined that Dr.

Congdon's indications that Plaintiff could only work for three hours per day and would miss four days of work per month were inconsistent with the other evidence detailed earlier in the decision. *See* Tr. at 20, 21.

b.    Dr. Hauck's Opinion

On November 11, 2009, Dr. Hauck described Plaintiff's progress as poor and impaired due to a severe emotional problem. Tr. at 256. He wrote the following:

> Ms. Daily is currently unable to work due to ongoing neck and lumbar pain. She is further hindered by severe emotional distress. I strongly recommend counseling for her to aid in her recovery. Ms. Daily has expressed a desire to return to work but is physically incapable at this time.

*Id.*

Dr. Hauck wrote a second letter on January 20, 2010, in which he indicated Plaintiff had a delicate emotional state and recommended that she obtain proper psychiatric care. Tr. at 284.

Plaintiff argues that the ALJ erroneously discredited Dr. Hauck's assessment of Plaintiff's need for mental health counseling. [ECF No. 15 at 13–14].

The Commissioner contends the ALJ properly discounted Dr. Hauck's opinion because Dr. Hauck was not an acceptable medical source, because his opinion was inconsistent with the medical evidence and Plaintiff's activities of daily living, and because his statements regarding Plaintiff's emotional state were outside the scope of his expertise. [ECF No. 18 at 21–22].

Pursuant to 20 C.F.R. §§ 404.1527(b) and 416.927(b), the ALJ must consider all relevant evidence in the case record in determining whether a claimant is disabled. *See*

*also* SSR 06-3p. Medical opinions may only be rendered by "acceptable medical sources," which include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. SSR 06-3p; *see* 20 C.F.R. §§ 404.1513(a), 416.913(a). "Other sources" are defined as individuals other than acceptable medical sources and include medical providers, such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists, as well as non-medical sources, such as educational personnel, social welfare agency personnel, rehabilitation counselors, spouses, parents, other relatives, friends, neighbors, clergy, and employers. 20 C.F.R. §§ 404.1513(d), 416.913(d). Medical opinions must be considered based on the criteria set forth in 20 C.F.R. S§ 404.1527(c) and 416.927(c), but opinions from "other sources" are not medical opinions. SSR 06-3p. While the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) do not have to be explicitly considered when evaluating the opinions of other medical sources, they represent basic principles for the consideration of all opinion evidence. *Id.* "The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case," and should be based on "consideration of the probative value of the opinions and a weighing of all evidence in that particular case." *Id.*

The ALJ accorded little weight to Dr. Hauck's opinion. Tr. at 21. He recognized that Dr. Hauck, as a chiropractor, was not an acceptable medical source who could provide a medical opinion concerning disability. *Id.* He determined that Dr. Hauck's assessment regarding Plaintiff's emotional state and need for psychiatric care was refuted

by Plaintiff's mental health treatment history. *Id.* Finally, he concluded that Dr. Hauck's opinion was refuted by Plaintiff's presentation upon routine examination and her ability to engage in daily activities. *Id.*

The undersigned recommends a finding that the ALJ did not err in his assessment of Dr. Hauck's opinion. The ALJ appropriately noted that Dr. Hauck's opinion, as that of a chiropractor, was not a medical opinion because it was not an opinion rendered by an "acceptable medical source" as defined in 20 C.F.R. §§ 404.1513(a) and 416.913(a). The ALJ provided sufficient reasons for discounting Dr. Hauck's opinion, noting that evidence from Plaintiff's psychiatrist and other evidence in the record, including Plaintiff's daily functioning, contradicted Dr. Hauck's opinion. *See* Tr. at 21. Therefore, the undersigned concludes that the ALJ appropriately weighed Dr. Hauck's opinion against all evidence and concluded that it was not supported by the record.

### c.    Dr. Tyler's Opinion

Dr. Tyler indicated "[s]he does not appear able to perform work-related functions." Tr. at 351. She further stated "[s]he does not appear able to make social, personal, and occupational adjustments." *Id.* However, she assessed a GAF score of 60. Tr. at 351. Dr. Tyler went on to provide the following:

> Ms. Dailey has a subjective sense of being neurocognitively impaired but in fact there are no indications, which would cause such severe deficits. It appears that she was not willing, basically for emotional reasons, to exert herself on some parts of the mental status exam. She does display symptoms of major depression and there are symptoms of major depression in the file. However, she states that there is no form of antidepressant medication, psychotherapy, counseling or self-help that can be of any value to her. This raises the possibility of an underlying personality disorder.

*Id.* She assessed Plaintiff's prognosis as fair to poor. Tr. at 352.

Plaintiff further argues that the ALJ did not adequately explain what weight he accorded to Dr. Tyler's opinion. [ECF No. 15 at 14].

The Commissioner argues that the ALJ correctly discounted Dr. Tyler's opinion indicating extreme limitations on Plaintiff's ability to work and make adjustments because it was not supported by the record. [ECF No. 18 at 23].

The ALJ indicated that he accorded some weight to Dr. Tyler's opinion that Plaintiff "did not appear to be able to perform work-related functions nor able to make social, personal, and occupational adjustments." Tr. at 22. He stated that his assessed limitations to "simple, routine, and repetitive tasks with no production rate or pace work and occasional interaction with the public" were "consistent with and supported by" Dr. Tyler's opinion. *Id.*

The undersigned recommends a finding that the ALJ did not adequately explain the weight he accorded to Dr. Tyler's opinion as required by 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) and SSR 96-2p. The ALJ neglected to explain how he drew from Dr. Tyler's assessment that Plaintiff did not appear able to perform work-related functions or to make social, personal, and occupational adjustments a conclusion that Plaintiff could "perform simple, routine, and repetitive tasks with no production rate or pace work and occasional interaction with the public." *See* Tr. at 22, 351–52. The undersigned acknowledges that there are inconsistencies in Dr. Tyler's statement and that the ALJ may have reached this conclusion based on those inconsistencies. However, the ALJ did not explain how he reached the conclusion, which presents a problem to this

court in its attempt to determine if the ALJ's decision is supported by substantial evidence. Therefore, the ALJ should readdress Dr. Tyler's opinion with greater detail on remand.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

December 29, 2014                          Shiva V. Hodges
Columbia, South Carolina                   United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).